UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | Case No.: 2:20-cr-00204-GMN-EJY |
| vs. | ) | |
| | ) | **ORDER** |
| XZAVIONE TAYLOR, | ) | |
| Defendant. | ) | |

Pending before the Court is the Report and Recommendation of United States Magistrate Judge Elayna J. Youchah, (ECF No. 41), counseling that the Court grant Defendant Xzavione Taylor's ("Defendant's") Motion to Suppress, (ECF No. 14). The Government timely filed its Objection, (ECF No. 47), and Defendant filed a Response, (ECF No. 50).

**I.   BACKGROUND**

On August 12, 2020, an Indictment was entered charging Defendant with one count of Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (*See* Indictment, ECF No.1). The Indictment issued following Defendant's arrest during a traffic stop conducted by the Las Vegas Metropolitan Police Department ("LVMPD"). During the stop and subsequent investigation, LVMPD officers discovered a firearm in Defendant's vehicle.

As the Magistrate Judge explains, the facts of this case are largely undisputed because the events in question were recorded by the LVMPD officers' body camera footage. (Report and Recommendation ("R&R") 1:16–17, ECF No. 41). On the evening of July 10, 2020, LVMPD

Officers Gariano and Alvarado were patrolling in Northeast Las Vegas.[1] The officers executed the traffic stop, pulling over Defendant because his vehicle lacked a license plate and a temporary registration tag in the window. (Arrest Report, Ex. B to Mot. Suppress, ECF No. 14-2). Defendant acknowledged that he knew why he was stopped and claimed he had just gotten the vehicle. (*See* Body Camera 0:00–1:50, Ex. A to Mot. Suppress, ECF No. 14-1). Officer Gariano asked Defendant some preliminary questions, including whether Defendant had any drugs or weapons in the car and whether he had been arrested before; Defendant denied the presence of any weapons or drugs and volunteered that he was currently on supervised release for a conviction of felon in possession of a firearm. (*Id.*). Because Defendant did not have any identification with him, he gave Officer Gariano his name, social security number, and date of birth. (*Id.*).

Officer Gariano then ordered Defendant out of his vehicle, and they walked back to the patrol car, where Officer Alvarado was waiting. (*Id.* 2:06–2:30). Prior to frisking Defendant, Officer Gariano removed the unzipped fanny pack that Defendant was wearing across his chest and set it on the hood of the patrol car. (*Id.* 2:30–40).[2] Once the fanny pack had been removed, Officer Alvarado proceeded to pat down Defendant. (*Id.* 127:9–129:13). Meanwhile, Officer Gariano conducted a records search with Defendant's information using his patrol car's mobile data terminal. (*Id.* 60:1–61:17).[3] This search confirmed that that Defendant had prior felony

---

[1] Officer Gariano testified that this is a high crime area. (Hr'g Tr. 76:23–24, ECF No. 42).

[2] At the Motion hearing, Officer Gariano testified that "we've been seeing an uptick of people concealing firearms in fanny packs that are slung around their body and I just wanted to make sure that there [were] no weapons on his person at that point." (Hr'g Tr. 25:17–26:2, ECF No. 42). Regarding the fanny pack, Officer Alvarado testified that "it's known that's where subjects primarily sometimes conceal weapons." (*Id.* 95:6–23).

[3] Officer Gariano searched Defendant's criminal history in the National Crime Information Center and the Nevada Criminal Justice Information System, but not the Department of Motor Vehicles database. (Hr'g Tr. 60:1–61:17, ECF No. 42).

convictions for crimes such as Robbery and Grand Larceny of an Automobile. (Arrest Report, Ex. B to Mot. Suppress).

After learning this information, Officer Gariano exited the patrol car and inquired again if Defendant had a gun in his vehicle. (Body Camera 5:30–5:50, Ex. A to Mot. Suppress). Defendant again denied the presence of a gun, and Officer Gariano asked Defendant if he could "check." (*Id*.). Defendant responded, "it don't matter, I just got [the car], it don't matter to me." (*Id.*). Officer Gariano searched the vehicle and found a gun under the driver's seat. (Arrest Report, Ex. B to Mot. Suppress). Officer Alvarado then placed Defendant in handcuffs, and Defendant confessed that he had a gun in the car. (*Id.*). Defendant was ultimately arrested for being a prohibited person in possession of a firearm under state law, and then indicted under federal law for the same crime. (*See generally* Indictment, ECF No. 1).

In his Motion to Suppress, Defendant asks the Court to exclude the firearm and his confession from evidence because the "police unlawfully prolonged the stop to investigate non-traffic offenses for which they lacked reasonable suspicion." (Mot. Suppress 1:19–22, ECF No. 14). Following an evidentiary hearing, the Magistrate Judge recommends that this Court find that the officers impermissibly prolonged the traffic stop without reasonable suspicion, and therefore, evidence of the gun and Defendant's statements should be excluded as fruit of the poisonous tree. (R&R 17:3–4, 18:10–25, 20:2–5).

## II. <u>LEGAL STANDARD</u>

A party may file specific written objections to the findings and recommendations of a United States Magistrate Judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1)(B); D. Nev. R. IB 3-2. Upon the filing of such objections, the Court must make a de novo determination of those portions of the Report and Recommendation to which objections are made. *Id*. The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); D. Nev. IB 3-2(b).

## III. DISCUSSION

The Government asserts two objections to the Magistrate Judge's Report and Recommendation. First, the Government argues that the traffic stop was not prolonged during Officer Gariano's records search or Officer Alvarado's pat down, and even if it was prolonged, the officers had the requisite reasonable suspicion to extend the stop. (Objection ("Obj.") 7:1–27:3, ECF No. 47). Second, the Government claims that Defendant consented to the search of his vehicle, and so the gun found as a consequence of that search should not be excluded from evidence. (*Id.* 6:22). The Court will discuss each objection in turn.

### A. Traffic Stop Investigation

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Generally, a warrant is required to ensure a search's reasonableness. *Maryland v. Dyson*, 527 U.S. 465, 466, 119 S. Ct. 2013, 144 L. Ed. 2d 442 (1999). Thus, a warrantless search or seizure is presumed unreasonable unless it falls into a "specifically established and well-delineated exception[]." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 356 (1967)). For example, in *Terry v. Ohio*, the Supreme Court determined that a suspect on the street could be briefly detained and investigated without a warrant when an officer has "a reasonable suspicion of criminal activity based on 'specific and articulable facts and rational inferences from those facts.'" 392 U.S. 1, 19, 21 (1968); *Florida v. Royer*, 460 U.S. 491, 512 (1983). If the officers also have a reasonable suspicion that the suspect is armed and dangerous, they can then frisk or pat down the suspect in the interests of officer safety. *See Terry*, 392 U.S. at 24. This principle extends to traffic stops, which are "more analogous to a so-called '*Terry* stop'. . . than to a formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984).

1    "A seizure for a traffic violation justifies a police investigation of that violation."
2    *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).  However, a traffic stop becomes
3    unlawful when it is "prolonged beyond the time reasonably required to complete [its] mission,"
4    that is, "to address the traffic violation that warranted the stop, . . . and . . . related safety
5    concerns . . . ." *Id.* at 350–51, 354 (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)).
6    Nonetheless, a traffic stop "may be extended to conduct an investigation into matters other than
7    the original traffic violation . . . if the officers have a reasonable suspicion of an independent
8    offense." *United States v. Landeros*, 913 F.3d 862, 867 (9th Cir. 2019) (citing *Rodriguez*, 575
9    U.S. at 356–57).  In other words, if any time is added to a traffic stop to investigate an offense
10   other than the traffic infraction, police officers must have an independent reasonable suspicion
11   of criminal activity. *See United States v. Evans*, 786 F.3d 779, 787 (9th Cir. 2015).  The Court
12   will first consider whether the traffic stop was prolonged, before addressing reasonable
13   suspicion.

### 1.  Prolongation of the Traffic Stop

15   The Report and Recommendation found that the officers prolonged the traffic stop
16   because they "pause[d] the traffic investigation . . . to investigate a potential gun crime." (*See*
17   R&R 14:4–14,15:3–9).  The Magistrate Judge explained that, "[Officer] Gariano agreed with
18   Defense Counsel that 'everything changed' when he learned Defendant was on parole from a
19   conviction for being a felon in possession of a firearm," shifting his focus to "whether
20   Defendant had a gun." (R&R 3:3–7).  The Magistrate Judge concluded that Officer Gariano had
21   stopped investigating a traffic offense and had started to investigate a gun crime, implicating
22   the records search, pat-down, and eventual car search as prolongations of the stop.

23   However, Officer Gariano's shift in focus does not necessarily equate to a deviation
24   from the traffic stop's mission.  An officer's mission during an ordinary traffic stop includes
25   inquiries such as "'checking the driver's license, determining whether there are outstanding

warrants against the driver, and inspecting the automobile's registration and proof of insurance' as these checks are aimed at 'ensuring that vehicles on the road are operated safely and responsibly.'" *Evans*, 786 F.3d at 786 (quoting *Caballes*, 543 U.S. at 408). However, "an ex-felon registration check . . . violate[s] the Fourth Amendment" absent independent reasonable suspicion because it is "wholly unrelated to [the] 'mission' of 'ensuring that vehicles on the road are operated safely and responsibly.'" *Id.* at 780–81, 786 (quoting *Caballes* 543 U.S. at 408). An ex-felon registration check "entails inquiring into [the suspect's] criminal history and then determining whether he was properly registered at the address he provided to [law enforcement]." *Id.* at 783.

      Here, Officer Gariano testified that he conducted a records search on Defendant using his patrol car's mobile data terminal. (Hr'g Tr. 60:1–61:17, ECF No. 42). He visited the National Crime Information Center, which is a database that will alert an officer if a suspect has any outstanding warrants, and the Nevada Criminal Justice Information System, which catalogs Nevada criminal history. (*Id.* 60:10–25, ECF No. 42). Officer Gariano further testified that a criminal history search is another way to identify a person without identification, such as Defendant. (*Id.* 46:12–18). Nothing about these searches deviated from the ordinary inquiries made by officers during a typical traffic stop; Officer Gariano was checking for outstanding warrants and identifying the driver, both of which are actions aimed at ensuring road safety. *See Evans*, 786 F.3d at 786. *Cf. United States v. Landeros*, 913 F3d 862, 867–68 (9th Cir. 2019). (indicating that while identifying a passenger is not part of the traffic stop's mission, identifying a driver is, because it "ensure[s] vehicles on the road are operated safely and responsibly").

      Defendant likens Officer Gariano's criminal history records search to the ex-felon registration check that the Ninth Circuit invalidated in *Evans*, claiming that it was unrelated to the traffic mission. (Mot. Suppress 10:11–15, ECF No. 14). However, an ex-felon registration

check involves not only searching criminal history, but also determining whether the suspect has properly registered his address with law enforcement.  The part of an ex-felon registration check that deviates from the traffic mission is the address confirmation; in Nevada, it is a misdemeanor when felons fail to register their address, so checking address registration after learning the suspect is a felon becomes a separate criminal investigation that deviates from the stop's mission. *See* NRS §§ 179C.100–179C.220; *Evans*, 786 F.3d at n.5.  In this case, Defendant has presented no evidence that Officer Gariano's records search was more akin to an impermissible ex-felon registration check, than to mere a warrant or identification inquiry. *See United States v. Caymen*, 404 F.3d 1196, 1199 (9th Cir. 2005) (citing *Rakas v. United States*, 439 U.S. 128 (1978) ("the proponent of the motion to suppress evidence has the burden of establishing that his own rights are violated by the challenged search or seizure.")).[4]  Thus, because the records search was part of the mission of the traffic stop, the traffic stop was not prolonged.

Similarly, Officer Alvarado did not prolong the traffic stop when he patted down Defendant because the entirety of the pat-down occurred while Officer Gariano lawfully conducted the records searche.[5]  While a frisk may not be part of the ordinary mission of a traffic stop, in this scenario, patting down Defendant was not a prolongation because no additional time was added to the stop to accommodate it. *See Rodriguez*, 575 U.S at 350–51 (quoting *Caballes*, 543 U.S. at 407).

//

---

[4] For a traffic stop, before the ultimate burden of proof on a Fourth Amendment motion to suppress shifts to the Defendant, the police officer has the initial burden to justify the traffic stop itself.  *See United States v. Willis*, 431 F.3d 709, 724 (9th Cir. 2005) (Fletcher, Circuit J. dissenting).  However, in this case, it is undisputed that the traffic stop was valid because Defendant was pulled over for a traffic offense: lack of registration.

[5] Patting down a suspect without reasonable suspicion that he is armed and dangerous is unlawful. *See Terry v. Ohio*, 392 U.S. 1, 24 (1968).  However, in this case, the officers had a reasonable suspicion that Defendant was armed and dangerous, which the Court discusses in the next section.

## 2. Reasonable Suspicion to Prolong the Traffic Stop

Even if the Court found that the traffic stop was prolonged, the Court also disagrees with the Magistrate Judge's recommendation that the officers did not have the requisite reasonable suspicion to do so. The Magistrate Judge found the proffered suspicion insufficient because it is predicated on only four pieces of information: (1) Defendant's car lacked registration, (2) Defendant was driving without a driver's license or any identification on him, (3) Defendant was driving in a high crime area, and (4) Defendant was on supervised release from a conviction for being a felon in possession of a firearm. (R&R 14:6–14).

The Court agrees that these four facts alone are not enough to establish reasonable suspicion to investigate a gun crime. While driving a car without a license plate or identification may raise reasonable suspicion sufficient to investigate a stolen vehicle, it does not provide reasonable suspicion to investigate a gun crime. *See United States v. Perez*, 37 F.3d 510, 514 (9th Cir. 1994) (quoting *United States v. Fernandez*, 18 F.3d 874, 879 (10th Cir. 1994) ("[A] defining characteristic of our traffic stop jurisprudence is the defendant's lack of a valid registration, license, bill of sale, or some other indicia of proof to lawfully operate and possess the vehicle in question, thus giving rise to objectively reasonable suspicion that the vehicle may be stolen."), *overruled on other grounds by United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir. 2007)); (Hr'g Tr. 52:12–15, ECF No. 42). Here, Officer Gariano testified multiple times that he was investigating Defendant's possible commission of a gun crime. (*See, e.g.*, Hr'g Tr. 55:3–8; 66:10–12; 69:13–15, ECF No. 42). Further, neither prior criminal history nor presence in a high crime area alone can support reasonable suspicion for a detention or arrest. *See Burrell v. McIlroy*, 464 F.3d 853, n.3 (9th Cir. 2006); *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Even when considered together, Defendant's prior criminal history and presence in a high crime area cannot establish reasonable suspicion; otherwise "conceivably every time an individual with a prior gun or drug conviction is stopped for a traffic violation in

a high crime area, law enforcement would be free to expand the stop into a separate criminal investigation." (R&R 16:17–20).  Accordingly, the Magistrate Judge is correct that these facts alone are not sufficient or particularized enough to support reasonable suspicion that a gun crime is afoot, especially considering that Defendant exhibited no furtive movements, dangerous behavior, or nervousness throughout the stop. (R&R 14:15–23).

However, there was additional key information known to Officer Gariano: Defendant was wearing a fanny pack, and Officer Gariano's personal experience indicated that persons in the area had been hiding guns in fanny packs.  When assessing the reasonableness of a search, courts allow officers to "make inferences that draw upon their specialized training and experience in the field." *See United States v. Navarro*, 756 Fed. Appx. 702, 704 (9th Cir. 2018). Here, both Officer Gariano and Officer Alvarado testified that, in their experience, a fanny pack is a common location to store a firearm. (*See* Hr'g Tr. 25:17–26:2, 95:6–23, ECF No. 42).  It is then reasonable to conclude that there could be a weapon inside a fanny pack, indicating that a suspect could be armed and dangerous. *See United States v. Leary*, No. 19-cr-10474-DJC-1, 2020 WL 6384446, at *3 (D. Mass. Oct. 20, 2020) (finding reasonable suspicion that a suspect wearing a fanny pack was armed and dangerous).  Accordingly, the presence of the fanny pack, coupled with the officers' personal experiences, created a reasonable suspicion that Defendant was armed and dangerous, which justifies the pat-down in the interests of officer safety. *See Terry*, 392 U.S. at 24.

Similarly, the knowledge that Defendant had a felony conviction, in conjunction with the possible presence of a firearm, provides reasonable suspicion that Defendant was committing a gun crime. *Burrell*, 464 F.3d at n.3 ("although a prior criminal history alone cannot establish reasonable suspicion . . . it is permissible to consider such a fact as part of the total calculus of information").  Officer Gariano knew Defendant was a convicted felon; Defendant had volunteered this information prior to the moments of disputed prolongation. (*See*

Body Camera 0:00–1:50, Ex. A to Mot. Suppress). Officer Gariano also had a reasonable suspicion that Defendant was armed with a gun, as discussed above. In this case, because Defendant is a convicted felon, reasonable suspicion that Defendant has a gun also provides reasonable suspicion that Defendant may be committing a crime, because it is a crime for a felon to possess a firearm. *See* 18 U.S.C. §§ 922(g)(1) and 924(a)(2). As such, Officer Gariano had the requisite reasonable suspicion required to prolong the traffic stop to investigate a gun crime.

The Report and Recommendation found a lack of reasonable suspicion in part because "generalized concern, even when genuine and well intentioned, is not a lawful basis to expand a traffic stop into a gun crime investigation." (R&R 16:23–24). It continued, "there must be something more than a high crime area and a criminal history that lawfully supports reasonable suspicion," positing that the only other reason for the prolongation of the traffic stop was Officer Gariano's personal, but unsubstantiated, concern that Defendant had a gun. (R&R 15:3–9, 17:1–2); (Hr'g Tr. 47:7–14, ECF No. 42) (explaining that everything changed for Officer Gariano when he learned defendant was on parole because he thought there might be a gun). In its Objection, the Government claims that the Report and Recommendation came to this conclusion by erroneously relying on Officer Gariano's subjective motivations to prolong the stop based on a hunch that Defendant possessed a gun, rather than on an objective survey of the facts known to Officer Gariano at the time. (Obj. 11:7–13:21).

The Supreme Court has found that "subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis," and "the Fourth Amendment's concern with 'reasonableness' allows certain actions to be taken in certain circumstances, *whatever* the subjective intent." *Whren v. United States*, 517 U.S. 806, 813–14 (1996). Further, "the standard for determining whether probable cause or reasonable suspicion exists is an objective one; it does not turn . . . on the subjective thought processes of the officer," as long as the facts

known to the officer amount to reasonable suspicion. *United States v. Magallon-Lopez*, 817 F.3d 671, 675 (9th Cir. 2016) (citing *Moreno v. Baca*, 431 F.3d 633, 639–40 (9th Cir. 2005)) ("the facts justifying the stop must be known to officers at the time of the stop").

In the present case, the objective facts known to Officer Gariano support a finding of reasonable suspicion: Defendant was driving without a license or registration in a high crime area, he was convicted for being a felon in possession of a firearm, he was wearing a fanny pack, and the officers testified that there had been an uptick of people concealing firearms in fanny packs.[6]  Regardless of any subjective motivation or hunch that Officer Gariano was acting upon, the objective facts at his disposal would still amount to the requisite reasonable suspicion required to prolong the stop. *See id.*

**B. Vehicle Search**

Because the Report and Recommendation found that Officer Gariano did not have reasonable suspicion to prolong the traffic stop and investigate a gun crime, the Magistrate Judge did not reach the question of whether Officer Gariano's subsequent search of Defendant's vehicle was lawful.  Accordingly, the Court remands the Motion to Suppress to the Magistrate Judge for a recommendation regarding whether the search of Defendant's car was lawful, given that the Officers did not unlawfully prolong the traffic stop.

//
//
//
//

---

[6] During the hearing, the parties debated whether Officer Gariano gave enough testimony about the fanny pack to consider it as part of the reasonable suspicion analysis. (*See, e.g.*, Hr'g Tr. 109:11–112:12, ECF No. 42); (Hr'g Tr. 27:7 –22; 36:21–37:17, ECF No. 43).  Officer Gariano testified that Defendant was wearing a fanny pack, that he helped Defendant remove the fanny pack, and that there was an uptick of people concealing firearms in fanny packs. (Hr'g Tr. 25:15–26:7, ECF No. 42).  This is adequate testimony to establish that Officer Gariano had knowledge of the fanny pack and could draw reasonable inferences from its presence at the scene.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Report and Recommendation, (ECF No. 41), is **REJECTED.**

**IT IS FURTHER ORDERED** that the Motion to Suppress is **REMANDED** to the Magistrate Judge for a recommendation on whether the search of Defendant's car was lawful, given that the Officers did not unlawfully prolong the traffic stop.

**DATED** this __18__ day of February, 2021.

_____
Gloria M. Navarro, District Judge
United States District Court