UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>XZAVIONE TAYLOR,<br><br>Defendant. | Case No. 2:20-cr-00204-GMN-EJY<br><br>**REPORT AND RECOMMENDATION**<br><br>On Remand |

This matter is on remand from the February 19, 2021 Court Order rejecting the undersigned's Report and Recommendation recommending Defendant's Motion to Suppress be granted. ECF No. 56. The February 2021 Order holds that Las Vegas Metropolitan Police Department ("LVMPD") officers had reasonable suspicion to prolong the traffic stop at issue. *Id*. at 11. The Court, however, remanded the Motion to Suppress for a Report and Recommendation regarding whether the search of Defendant's car was lawful. *Id*.

**I.    Facts Relevant to the Issue of Consent**

The interaction between Defendant and the LVMPD occurred on the evening of July 10, 2020, when LVMPD Officers Gariano and Alvarado stopped the car Defendant was driving because the car displayed no license plate and no temporary tag. ECF No. 14 at 2. After making the traffic stop, Officer Gariano obtained Defendant's name, Social Security Number, and date of birth, and then told Defendant to step out of the car. *Id*. at 3. Once out of his car, Defendant and Officer Gariano walked to the front of the patrol vehicle where Officer Alvarado was standing. *Id*. Defendant and Officer Alvarado recognized one another; laughed and had a friendly conversation; Defendant's fanny pack was removed from around his body; and, Defendant was frisked by Officer Alvarado while Officer Gariano did a records check on Defendant. Gov't Ex. 1 (Gariano's Body Cam. video) at 2:21-5:26.

Once the records check was completed, Officer Gariano engaged in a brief exchange with Defendant asking him three questions: (1) "Anything in the car?"; (2) "No guns?"; and, (3) "Cool if

1

we check?" *Id*. at 5:30-5:38. Defendant responded that there was nothing in the car, including no guns and, to the last question, stated: "It don't matter, I just got [the car]. It don't matter to me." *Id*. at 5:40-5:43. Officer Gariano searched Defendant's vehicle and found a gun under the driver's seat (*id*. at 5:56-6:40), prompting Officer Alvarado to place Defendant in handcuffs. Gov't Ex. 1 at 6:45.

While it is true that Officers Gariano and Alvarado were in uniform and had weapons on their respective belts throughout their interaction with Defendant, the officers never drew their guns, and Defendant was not handcuffed at any time prior to Officer Gariano discovering the gun in Defendant's car. *Id*. at 00:29-6:45. Although Officer Gariano did not tell Defendant he was free to leave prior to requesting consent to search the vehicle, Defendant was not under arrest, and no *Miranda* warning was given. *Id*. It is true that Defendant was instructed where to stand after exiting his car, but there is no evidence that Defendant was even threatened with arrest while he spoke to the officers prior to the search of his car and discovery of the gun. *Id*. Defendant was not told he had a right not to consent to the search, but he also was not told a warrant could or would be obtained if he refused the request made. *Id*. A review of the Body Camera footage shows the interactions between Defendant and the Officers were cordial, and between Defendant and Officer Alvarado appeared friendly. *Id*. The entire interaction captured shows no evidence of overt or implied coercion. *Id*.

## II.   Parties' Arguments

Defendant argues that he did not consent to the search because "he was outnumbered" by uniformed officers who had removed him from his car, patted him down for weapons, and had their weapons visible through the interaction. ECF No. 14 at 12. Defendant admits the officers' tone was "non-threatening," but says that their refusal to accept his denial of possession of weapons and failure to advise him that he could refuse the search, together with his inability to leave, demonstrates his consent was involuntary. *Id*. Defendant further argues that when Officer Gariano asked if he could "check" the car, he was not asking "for permission to search the car for any evidence of criminal activity." *Id*. at 13. Defendant says his statement that "it don't matter to me" was not an unequivocal consent, but even if the Court deems otherwise, the search exceeded the scope of the consent. *Id*. Defendant argues that his exchange with Officer Gariano gave the Officer the right to

1  "conduct a brief, cursory walk around the car and perhaps peer through the open windows … ." *Id*.
2  at 14.¹

3      The Government argues that all factors the Court will consider to determine if Defendant's
4  consent was voluntary fall in favor of finding voluntary consent.  The Government states Defendant
5  was not in custody and, therefore, a *Miranda* warning was not required.  ECF No. 20 at 13. The
6  Government points out that the two officers (the only ones on scene) were friendly throughout their
7  interactions with Defendant; Defendant was not in handcuffs until after the gun was located in his
8  car; neither officer drew their weapons at any time while interacting with Defendant; and, neither
9  officer "explicitly or implicitly" suggested that Defendant's failure to consent would be futile
10 because they could obtain a search warrant if consent was declined.  *Id*.  The Government further
11 argues that under the applicable objective reasonableness standard, Defendant's consent was
12 unequivocal.  *Id*.  The Government states the search was brief, the request was to check the car for
13 weapons (clear from the exchange between Officer Gariano and Defendant preceding the request),
14 and the search did not exceed the scope of consent granted.  *Id*. at 15.

**III.   Discussion**

The United States Supreme Court summarized Fourth Amendment law pertaining to consents to search in *Florida v. Jimeno*, 500 U.S. 248 (1991).

> The touchstone of the Fourth Amendment is reasonableness. … The Fourth Amendment does not proscribe all state-initiated searches and seizures; it merely proscribes those which are unreasonable. … Thus, we have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so. ... The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness-what would the typical reasonable person have understood by the exchange between the officer and the suspect?

*Id*. at 250-51 (internal citations omitted); *United States v. Kaplan,* 895 F.2d 618, 622 (9th Cir.1990) (a search conducted without a warrant does not offend the Constitution "if conducted pursuant to the

---

¹ In his Reply Brief, Defendant raises the issue of race and seems to suggest that Defendant's race would cause him not to feel free to say no to the request to search his vehicle. ECF No. 26 at 12. However, Defendant does not tie this issue to any conduct of either officer involved in this case. Moreover, there is no evidence to support the conclusion that race was at issue in this case.

valid consent of a person in control of the premises"). It is the government's burden to demonstrate that consent to a warrantless search was voluntary. *Kaplan*, 895 F.2d at 622. As Defendant contends, this burden is a "heavy one." *United States v. Reid*, 226 F.3d 1020, 1026 (9th Cir. 2000).

When analyzing the voluntariness of a consent, the Court considers five non-exclusive factors, including whether (1) the defendant was in custody, (2) the arresting officers had their guns drawn, (3) a *Miranda* warning was given, (4) the defendant was told he had the right not to consent, and (5) the defendant was told that a search warrant could be obtained. *United States v. Patayan Soriano*, 361 F.3d 494, 502 (9th Cir. 2004). The Ninth Circuit explains that "[i]t is not necessary to check off all five factors, but many of th[e] court's decisions upholding consent as voluntary are supported by at least several of the factors." *Id*.

Here, several of the factors above are uncontested. Officers Gariano and Alvarado did not have their guns drawn at any time during their interaction with Defendant, and he was not told that a search warrant could or would be obtained if he declined to consent. Gov't Ex. 1. With respect to the remaining factors, while it is true Defendant was not told that he had a right to refuse the request to search, the U.S. Supreme Court rejects this factor as determinative. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973) (internal citation omitted). And, although Defendant was the subject of a traffic stop, he had not been arrested, therefore was not in custody (*Berkemer v. McCarty*, 468 U.S. 420, 439-440 (1984)), and no *Miranda* warning was given.

The Court and the parties are aware that there was no use of force or threatening language used by either LVMPD officer at any time during their contact with Defendant. In fact, the interactions between Defendant and Officer Alvarado were cordial, if not friendly. Gov't Ex. 1. Defendant cites to no evidence suggesting his agreement to allow Officer Gariano's to search his car was motivated by fear, duress or coercion. Given all the facts before the Court, the arguments that Defendant was outnumbered and not free to leave do not demonstrate Defendant's response to Officer Gariano's request was anything other than voluntary.

Further, Defendant's statement that it did not matter to him if Officer Gariano searched his car came immediately after Officer Gariano asked Defendant if there was anything in the car, including any guns. Gov't Ex. 1 at 5:38. Officer Gariano did not place any limitation on his request

4

to search, and it is undisputed that Defendant expressed no objection to the search at any time before or during the brief search that occurred. *Id*. at 5:45-6:45. Defendant also did not state, suggest or infer that there was a limit to what Officer Gariano could check. *Id*. at 5:40-5:43. Instead, Defendant stated, without equivocation, that it did not matter to him whether the car was searched because he just got it. *Id*. The Court finds that a typical person would have objectively understood from this exchange that Defendant consented to the search of the vehicle he was driving.

"The scope of the search is generally defined by its expressed objective." *Jimeno*, 500 U.S. at 251 (internal citation omitted). The scope of the search in this case was simple—a search of Defendant's car for guns. A review of the search shows Officer Gariano doing a relatively quick search that included shining his flashlight under the driver's seat of Defendant's car. Gov't Ex. 1. at 5:56-6:40. Defendant offers nothing to suggest that this was extraordinary or atypical of a car search after an officer asked if there is a gun in the car, and seeks and obtains permission to search the car for guns.

Based on the totality of the circumstances confirmed through uncontested testimony and body camera footage, the Court finds Defendant's consent to search his car was voluntary and the scope of the search did not exceed that consent.

**IV.   Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that Defendant's Motion to Suppress (ECF No. 14) be DENIED.

Dated this 29th day of March 2021.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).