**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,  )
                                   Plaintiff,  )     Case No.: 2:20-cr-00204-GMN-EJY
     vs.  )
                                          )     **ORDER**
XZAVIONE TAYLOR,  )
                                Defendant.  )

Pending before the Court is the Report and Recommendation ("R&R") of United States Magistrate Judge Elayna J. Youchah, (ECF No. 60), counseling that the Court deny Defendant Xzavione Taylor's ("Defendant's") Motion to Suppress, (ECF No. 14), with respect to his claim that Las Vegas Metropolitan Police Department ("LVMPD") officers searched his car without proper consent. Defendant timely filed his Objection, (ECF No. 63), and the Government filed a Response, (ECF No. 67).

**I.   BACKGROUND**

On August 12, 2020, an Indictment was entered charging Defendant with one count of Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (*See* Indictment, ECF No. 1). The Indictment issued following Defendant's arrest during a traffic stop conducted by LVMPD. During the stop and subsequent investigation, LVMPD officers discovered a firearm in Defendant's vehicle.

The facts of this case are largely undisputed because the events in question were recorded by body camera footage. (*See* R&R 1:16–17, ECF No. 41). On the evening of July 10, 2020, LVMPD Officers Gariano and Alvarado executed the traffic stop, pulling over Defendant because his vehicle had neither a license plate nor a temporary registration tag. (Arrest Report,

Ex. B to Mot. Suppress, ECF No. 14-2). Defendant acknowledged that he knew why he was stopped and claimed he had just acquired the vehicle. (*See* Body Camera 0:30–2:06, Ex. A to Mot. Suppress, ECF No. 14-1). Officer Gariano asked Defendant some preliminary questions, including whether Defendant had any drugs or weapons in the car and whether he had been arrested before; Defendant denied the presence of any weapons or drugs and volunteered that he was currently on supervised release for a conviction of felon in possession of a firearm. (*Id.*). Because Defendant did not have any identification with him, he gave Officer Gariano his name, social security number, and date of birth. (*Id.*).

Officer Gariano ordered Defendant out of his vehicle, and they walked back to the patrol car, where Officer Alvarado was waiting. (*Id.* 2:06–2:30). Officer Alvarado and Defendant recognized each other, and they engaged in conversation while Officer Alvarado frisked Defendant. (*Id.* 2:25–5:25). Meanwhile, Officer Gariano conducted a records search, confirming that Defendant had prior felony convictions. (*Id.* 2:53–5:25); (Arrest Report, Ex. B to Mot. Suppress). Following the records search, Officer Gariano engaged in the following exchange with Defendant:

| | | |
|---|---|---|
| Officer Gariano: | | Is there anything in the car? |
| Defendant: | | No, no I just got it from my aunt. |
| Officer Gariano: | | No guns? |
| Defendant: | | No, sir. |
| Officer Gariano: | | Alright, cool if we check? |
| Defendant: | | It don't matter, I just got it, I just got it, it don't matter to me. |

(*See* Body Camera 5:30–5:50, Ex. A to Mot. Suppress).

Officer Gariano searched the front of Defendant's car, including the glove compartment and center console, and shined a flashlight under the driver's seat, where he found the gun.

(Arrest Report, Ex. B to Mot. Suppress); (Body Camera 5:55–6:45, Ex. A to Mot. Suppress). Officer Alvarado then placed Defendant in handcuffs, and Defendant confessed that he had a gun in the car. (Arrest Report, Ex. B to Mot. Suppress); (Body Camera 6:45–6:56). Defendant was ultimately arrested for being a prohibited person in possession of a firearm under state law, and then indicted under federal law for the same crime. (*See generally* Indictment, ECF No. 1).

On September 17, 2020, Defendant filed a Motion to Suppress to exclude the firearm and his confession from evidence because: (1) the "police unlawfully prolonged the stop to investigate non-traffic offenses for which they lacked reasonable suspicion;" and (2) "[Defendant] did not unequivocally and specifically consent to a search of the car for weapons or other contraband." (Mot. Suppress 1:19–22, 12:14–15, ECF No. 14). Without reaching the consent issue, the Magistrate Judge recommended granting Defendant's Motion to Suppress based on the LVMPD officers' alleged unlawful prolongation of the traffic stop. (R&R, 17:3–4; 18:10–25; 20:2–5, ECF No. 41). However, the Court rejected this recommendation, finding instead that the LVMPD officers had the requisite reasonable suspicion to lawfully prolong the traffic stop. (Order 11:4–10, ECF No 56). The Court remanded the Motion to Suppress to the Magistrate Judge for a new recommendation on whether the search of Defendant's car was lawful. (*Id.* 12:5–6). The Magistrate Judge now recommends denying Defendant's Motion to Suppress because Defendant voluntarily consented to a vehicle search and the scope of that search did not exceed the consent. (R&R 5:14–19, ECF No. 60).

## II. LEGAL STANDARD

A party may file specific written objections to the findings and recommendations of a United States Magistrate Judge made pursuant to Local Rule IB 1-4. 28 U.S.C. § 636(b)(1)(B); D. Nev. R. IB 3-2. Upon the filing of such objections, the Court must make a de novo determination of those portions of the Report and Recommendation to which objections are

made. *Id*. The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. 28 U.S.C. § 636(b)(1); D. Nev. IB 3-2(b).

### III. DISCUSSION

Defendant asserts two objections to the Magistrate Judge's R&R: (1) the Government failed to meet its heavy burden to show that Defendant's consent was voluntary; and (2) even if Defendant's consent was voluntary, Officer Gariano's search of the car exceeded the scope of the consent because the police did not expressly define the object of the search. (Objection to R&R ("Obj.") 1:18–23, ECF No. 63). The Court will discuss each objection in turn.

#### A. Voluntary Consent

Defendant argues that his consent to search the vehicle was not freely and voluntarily given because he was outnumbered by LVMPD officers and unable to leave. (*See* Mot. Suppress 11:14–12:13); (Obj. 6:9–18). However, the Magistrate Judge found this argument to be unpersuasive, noting that there is no evidence that Defendant's consent was motivated by fear, duress, or coercion. (R&R 4:19–25, ECF No. 60). The Court agrees.

Under the Fourth Amendment, "a search conducted pursuant to a valid consent is constitutionally permissible." *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973). Consent must be "freely and voluntarily" given and may not be a product of duress or coercion. *Id.* at 222–27. The Government bears the burden of proving that consent was "freely and voluntarily" given under the totality of circumstances. *Id.*

When determining the voluntariness of consent, district courts in the Ninth Circuit consider five non-exclusive factors: (1) whether the defendant was in custody; (2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether defendant was notified that he had a right not to consent; and (5) whether the defendant had been told a search warrant could be obtained. *United States v. Patayan Soriano*, 361 F.3d 494,

502 (9th Cir. 2004). No one factor is determinative, "but many [Ninth Circuit] decisions upholding consent as voluntary are supported by at least several of the factors." *Id.*

Here, Defendant was not in custody at the time consent was given, and thus Miranda warnings were not required. *See Berkemer v. McCarty*, 468 U.S. 420, 440 (1984) ("The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of Miranda."); *see also United States v. Ritter,* 752 F.2d 435, 438 (9th Cir. 1985) ("It would ... make little sense to require that *Miranda* warnings, which advise one of the right to remain silent and the right to counsel, be given by police before requesting consent."). Additionally, while both Officer Gariano and Officer Alvarado were armed, neither officer drew his weapon at any point during the encounter with Defendant. (*See generally* Body Camera, Ex. A to Mot. Suppress, ECF No. 14-1). Further, the officers did not attempt to elicit Defendant's consent by informing him that a warrant could be obtained to search his car. *Id.* Therefore, only one factor weighs in favor of finding that Defendant's consent was not voluntarily: the officers failed to notify Defendant that he had the right not to consent. However, while knowledge of the ability to refuse consent is an important factor to consider, "the Constitution does not require proof of knowledge of a right to refuse as the *sina qua non* of an effective consent to search." *United States v. Mendenhall*, 446 U.S. 544, 588–59 (1980); *see also Schneckloth*, 412 U.S. at 293 ("the prosecution is not required to prove that the subject of the search knew he had a right to refuse to consent as a necessary prerequisite to demonstrating a voluntary consent"). Considering that knowledge of the ability to refuse consent is not a determinative factor, in conjunction with the fact that the remainder of the factors weigh in favor of voluntary consent, indicates to the Court that Defendant's consent was voluntarily given.

Defendant further challenges the voluntariness of his consent by "urg[ing] this Court to consider how racial disparities in policing may affect a person's interaction with police." (Obj.

6:19–20). Interactions between an armed police officer and a suspect are inherently tense, and this tension may be heighted by personal experiences and other sociocultural factors, including race. However, voluntariness of consent is a fact-specific inquiry based on the particular circumstances surrounding a suspect's consent. *See Schneckloth*, 412 U.S. at 222–27; *see also Florida v. Jimeno*, 500 U.S. 248, 250–51 (1991) ("The touchstone of the Fourth Amendment is reasonableness . . . . The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness").

In the present case, the totality of the interaction between Defendant and the police reveals no coercive behavior on the part of the officers. The officers never used threatening or derogatory language, did not engage in deceptive tactics, and only asked Defendant once for consent to search his car. (*See generally* Body Camera, Ex. A to Mot. Suppress, ECF No. 14-1). In fact, the entire interaction was calm, and could even be described as friendly, especially when considering that Defendant and Officer Alvarado knew each other and engaged in conversation throughout the stop. (*Id.*). In sum, the interaction provides no evidence of fear, duress, or coercion caused by racial tensions between Defendant and the officers. Accordingly, because there is no indication of coercion, and a majority of the factors weigh in favor of voluntary consent, the Government has met its burden to show that Defendant's consent was "freely and voluntarily" given. *See Schneckloth*, 412 U.S. at 222.

**B. Scope of Search**

Defendant claims that, even if consent was voluntary, Officer Gariano's request to "check" Defendant's car was not specific enough to elicit the consent necessary to perform an invasive search of the car because Officer Gariano did not expressly define the object of his search as a gun. (*See* Mot. Suppress 13:11–14:6). Instead, Defendant argues that the scope of Officer Gariano's search should have been limited to "a brief, cursory walk around the car and perhaps [peering] through the open windows." (*Id.* 13:16–14:3). However, the Magistrate

Judge correctly determined that, based on the exchanges between Officer Gariano and Defendant, a reasonable person would have understood the scope of the search to include searching Defendant's car for guns. (R&R 5:5–9, ECF No. 60).

"The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness -- what would the typical reasonable person have understood by the exchange between the officer and the suspect." *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *see also United States v. Gutierrez-Mederos*, 965 F.2d 800, 803 (9th Cir. 1992). Further, "the scope of a search is generally defined by its expressed object." *Gutierrez-Mederos*, 965 F.2d at 803 (citing *Jimeno*, 500 U.S. at 251). For example, in *Florida v. Jimeno,* an officer informed the suspect that he believed that there were narcotics in the suspect's car and then obtained the suspect's consent to search the car for narcotics. *Jimeno*, 500 U.S. at 251. The Supreme Court held that it was reasonable for the officer to conclude that the suspect's consent extended to all areas of the car that could hold drugs, including unlocked containers within the car, because the suspect knew that the officer was searching for narcotics and placed no explicit limitations on the scope of the search. *Id.* at 251–52.

Defendant argues that the reasoning in *Jimeno* does not apply to the present case, citing *United States v. Reeves*, 798 F. Supp. 1459 (W.D. Was. 1992). (Obj. 9:4–10:2). In *Reeves*, police conducted a traffic stop and the suspect consented to the search of his vehicle. 798 F. Supp. 1459, 1462, 1468. The officers found crack cocaine concealed within a locked briefcase in the car's hatchback. *Id.* at 1463. However, the court determined that the scope of consent did not extend to the search of the briefcase because, unlike in *Jimeno*, the officers did not explain to the suspect that they were searching the car specifically for narcotics. *Id.* at 1468.

Similarly, Defendant claims that because Officer Gariano did not expressly explain that he was checking the car for a gun, *Jimeno* fails authorize the search. (Obj. 9:10–19). However, "the standard for measuring the scope of a suspect's consent under the Fourth Amendment is

that of 'objective' reasonableness," and any reasonable person would have understood from the exchange between Officer Gariano and Defendant *immediately preceding the search* that Officer Gariano would be searching Defendant's car for a gun. *See Jimeno*, 500 U.S. at 251. While Officer Gariano never directed a question to Defendant as explicitly as "may I search the car for a gun," the context of the exchange still identifies the object of the search as a gun because Officer Gariano requested to "check" the car as an immediate follow-up to his question about the presence of guns.[1] Therefore, by consenting to the "check," Defendant knowingly consented to a search of his car for guns, and thus, the situation in the present case is more analogous to *Jimeno* than *Reeves*.

To conclude, it was reasonable for Officer Gariano to search all areas of Defendant's car where a firearm could be concealed, including underneath the driver's seat, because Defendant placed no explicit limitations on Officer Gariano's request to "check" the car, and a reasonable person would understand that the object of Officer Gariano's search was a gun. *See Jimeno*, 500 U.S. at 251. Accordingly, Officer Gariano did not exceed the scope of Defendant's consent to search the vehicle.

//
//
//
//
//
//

---

[1] During the traffic stop in *Reeves*, the officers asked the suspect if there were any weapons, narcotics, or large amounts of currency in his vehicle. *United States v. Reeves*, 798 F. Supp. 1459, 1468, n.5 (W.D. Was. 1992). The court in *Reeves* found that this line of questioning was a "general inquiry . . . insufficient under *Jimeno* to reasonably define the express object of a search." *Id.* Defendant argues that Officer Gariano's request to "check" the car was a similarly general inquiry. (*See* Objection to R&R 9:10–19, ECF No. 63). However, Officer Gariano's request to "check" the car was not a general inquiry; it was an inquiry specifically about guns, which provides sufficient specificity to define the object of the search.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Report and Recommendation, (ECF No. 60), is **ADOPTED** in full.

**IT IS FURTHER ORDERED** that Defendant's Objection, (ECF No. 63), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress, (ECF No. 14), is **DENIED**.

**IT IS FURTHER ORDERED** that the Government's Objection, (ECF No. 47), is **GRANTED** per the Court's February 19, 2021 Order, (ECF No. 56), rejecting the Magistrate Judge's December 4, 2020 Report and Recommendation, (ECF No. 41).

**DATED** this 12 day of May, 2021.

_____
Gloria M. Navarro, District Judge
United States District Court